SMITH *v.* RAILROAD.

W. M. SMITH, admr. of JAMES WRIGHT, v. THE ATLANTIC AND CHARLOTTE AIR LINE RAILWAY COMPANY.

(Filed 13 May, 1908).

1. **Witnesses—Cross-examination—New Matter.**

   The cross-examination of an adversary's witness is not confined to matters about which the witness has testified on his examination in chief, but may extend to and include any matter relevant to the inquiry.

2. **Witnesses—Party May Show Contradiction, When.**

   While it is not ordinarily permissible in a party to assail or disparage the character of his own witness, or to ask questions having only this end in view, it is always open to such party to show that the facts are otherwise than as stated by his witness; and this may be done by the testimony of other witnesses, from other statements of the same witness, and, at times, by the facts and attending circumstances themselves—the *res gestæ.*

3. **Same—Conflicting Statements—Veracity—Questions for Jury.**

   In a suit to recover damages for the negligent killing by defendant of plaintiff's intestate it was admitted that a shifting engine used by the intestate in the course of his employment was not equipped with a grab-iron running across its front. Witness for plaintiff testified on examination in chief that plaintiff's intestate stepped on the footboard and reached for the grab-iron or whatever he could catch, and he did not know why he did not catch the grab-iron; and, on cross-examination, that he had warned plaintiff's intestate that his engine was not equipped with one : *Held,* the credibility of the testimony was for the jury, and they could accept or reject all or any part thereof as it might convey to their minds the imprint of truth.

4. **Employer and Employee—Rules of Employer—Orders—Intent—Waiver.**

   In an action for damages for the alleged negligent killing of plaintiff's intestate, when contributory negligence is relied upon as a defense, and the evidence tends to establish that the intestate was acting in disobedience of the orders of his vice-principal, given for the protection of employees, the order, to be effective, must have been given and received with the expectation and intent that it should be observed, and, as in the case of rules, it was open to the parties to show that no such intent existed, or that, by the attitude of the parties and their conduct concerning it, the order as a rule had been waived or abrogated.

**5. Same—Questions for Jury—Knowledge of Employer, Expressed, Implied.**

> In an action for damages for the alleged negligent killing of plaintiff's intestate there was evidence tending to show that the intestate, while engaged as one of a switching crew, was at some previous time warned by the conductor that a shifting engine did not have the usual grab-iron running across its front, and also as to the danger in getting aboard the engine in the manner in which the intestate did so, at the time of the injury; that the intestate acted in this respect as all the other hands engaged in this business were accustomed to act, including the conductor himself, and that in the present instance the conductor was standing on the footboard in full view and gave no warning: *Held*, it was not error for the lower court to instruct the jury that, while a violation of a known rule of the railroad company made for employees' protection and safety, when the proximate cause of the injury, would usually bar a recovery, it is not so when the rule is habitually violated, to the actual knowledge of the vice-principal or employer, or under such condition as to fix them with implied knowledge.

ACTION tried before *Moore, J.,* and a jury, at January Term, 1908, of MECKLENBURG.

There was evidence on the part of plaintiff tending to show that in January, 1906, the intestate, engaged in his employment as one of a switching crew, was run over and fatally injured on the yard of defendant company, from which injuries he soon thereafter died. D. H. Plott, a witness for plaintiff, among other things, testified in substance that on the night of the occurrence witness was conductor in charge of the switching crew of which deceased was then a member, and intestate, in the line of his employment, had thrown the switch and then took his position in front of the slowly moving engine, stepped on the footboard, reached for the grab-iron and, not catching anything, fell back on the track and was run over and injured as stated. The witness further testified as follows: "After Jim Wright threw the switch he stepped about three or four feet from the outside between the two rails and stopped in front of the engine, between the rails, to get on. The engine was moving at the rate of between two

and three miles an hour—not very fast.  As we moved toward him he stepped on the footboard.  I was on the footboard on the engineer's side—on the west side as the engine headed south.  He stepped on the footboard and reached up as usual to catch the grab-iron or something, whatever he could.  He did not catch anything and fell backwards in front of the moving train, and was run over and both legs cut off.  I don't know why Wright did not catch the grab-iron.  A switch engine usually has a grab-iron extending across over the top of end sill, four or five inches high.  The grab-iron is usually on top of end sill, and by stepping on footboard you can catch grab-iron.  The engine we were using that night had a flag at each corner.  There was no grab-iron running across the front of that engine on top of end sill."  The witness further said that this had been a road engine, changed for purposes of a switch engine by removing the cowcatcher and putting a footboard in front, and had no grab-iron, and that deceased at the time was acting in the line of his duty, and that brakemen in the performance of this duty properly took the position which was taken by the deceased on this occasion, and witness had done the same thing himself when engaged in this work.

A witness by the name of L. J. Snipes was asked as to the customary position and method of brakemen in that yard in performing the duty in which the deceased was engaged at the time, and said: "Always stand out in front, hold up one foot and let the footboard pick you up.  Sometimes you stand on the rail, sometimes on the end of cross-tie and sometimes on track, between rails.  You catch from the end of tie if the footboard is in good condition.  Grab-iron is supposed to be there to catch to."  It further appeared that at the time deceased stepped on the footboard he had a lantern in one hand and a brake stick in the other, and the witness Snipes testified that both were supposed to be used by switchmen when engaged in this duty.  Defendant offered no evidence.

On the issue as to contributory negligence the court charged

the jury that the intestate was required to act with due care and circumspection, and left it to them to determine whether on the facts and circumstances indicated the intestate was in the exercise of such care at the time; and declined to charge, as requested by defendant, that on the entire evidence, if believed, the intestate was guilty of contributory negligence.

There was a verdict for plaintiff, and defendant excepted and appealed.

*Burwell & Cansler* and *Stewart & McRae* for plaintiff.
*W. B. Rodman* for defendant.

HOKE, J., after stating the facts: It was admitted on the argument that defendant company was negligent in failing to provide an engine properly equipped for the work in which the intestate was engaged, and it is urged for error that the court declined to charge as requested by defendant on the issue as to contributory negligence, and this chiefly on the following statements appearing in the cross-examination of the plaintiff's witness, D. H. Plott:

"Q. You made a statement immediately after this accident, did you not?

"A. Yes.

"Q. I will ask you if in this statement you did not say this: 'The footboard was in good shape. This negro knew as well as I did that there were no grab-irons on this engine. I had warned him half a dozen times and told him to be careful.' "

(Plaintiff objected to this question because he has offered no testimony to prove that his intestate was ignorant of the fact that this engine was not equipped with grab-irons, and because witness has not sworn that the plaintiff's intestate knew that there were no grab-irons on the engine, or that he had warned said intestate that there were none, and that he should be careful on that account. Objection overruled. Plaintiff excepts).

SMITH *v.* RAILROAD.

"A. Yes; I made that statement.

"Q. I will ask you now if you had not warned Wright numbers of times that there were no grab-irons on this engine and to be careful."

(Plaintiff objects.    Objection overruled.    Plaintiff excepts).

"A. Yes; I had warned him.

"Q. That is the statement you made, is it not?

"A. Yes; that is my signature to it.

"Q. Did you not state at the time that 'I told this negro at least a dozen times not to stand on the track and get on an engine as he did last night'?"

(Plaintiff objects.    Objection overruled.    Plaintiff excepts).

"A. Yes; I told him that.   There was a footboard on the rear of this engine.   We were going down to get out of the way of No. 35."

It is the rule with us that the cross-examination of an adversary's witness is not necessarily confined to matters about which the witness has testified on his examination in chief, but may extend to and include any matter relevant to the inquiry.   *State v. Allen,* 107 N. C., 805; *Sawrey v. Murril,* 3 N. C., 397.   This, too, seems to be the rule recognized and followed in the English courts, though there is much conflict of authority on the question in this country.   An interesting discussion of the subject will be found in Professor Wigmore's work on Evidence, secs. 1885 to 1890, inclusive, in which the author gives decided intimation that the doctrine as it obtains in this State is supported by the better reason. The evidence, then, must be considered and dealt with as if it had come from plaintiff's witness, and this though it was in no way responsive to the testimony given in chief and may tend only to support an affirmative defense.   We do not conclude, however, as claimed by defendant, that because this is true the testimony of the witness must be taken as importing

absolute verity, nor that the plaintiff is thereby precluded
from insisting on any position which may contradict or in
any way antagonize the statements made by his witness.
While it is accepted doctrine that one who offers a witness
"presents him as worthy of belief," and except, perhaps, where
an examination is required by the law, as in the cases of sub-
scribing witnesses to wills and deeds (*Williams v. Walker,*
2 Rich. Eq., 294; 46 Amer. Dec., 53), a party will not be
allowed to disparage the character or impeach the veracity of
his own witness, nor to ask questions or offer evidence which
has only these purposes in view, it is always open to a litigant
to show that the facts are otherwise than as testified to by his
witness. *State v. Mace,* 118 N. C., 1244; *Chester v. Wil-
helm,* 111 N. C., 314. And this he may do, not only by the
testimony of other witnesses, but from other statements of
the same witness, and at times by the facts and attending cir-
cumstances of the occurrence itself, the *res gestæ.* *Becker v.
Koch,* 104 N. Y., 394.

In the present case, on his examination in chief, the wit-
ness Plott had stated in reference to this occurrence that "he
stepped on the footboard and reached up as usual to catch the
grab-iron or something, whatever he could." And again: "I
do not know why Wright did not catch the grab-iron. A
switch engine usually has a grab-iron extended across the top
or end sill, four or five inches high." The statement brought
out in the cross-examination, as we interpret it, nowhere inti-
mates that any present warning was given by the witness that
the engine was defective. The testimony is to the effect that
at some previous time or times such warning had been given
and the intestate directed to be careful, and from the facts
attending the occurrence, as given by the witness in his exami-
nation in chief, the jury might have concluded that the wit-
ness, in his written statement, had been mistaken as to the
engine, or that it was so long before the intestate could have
reasonably inferred that the defect had been remedied, or

they may have determined to reject it altogether as unworthy of credit. The credibility of testimony is for the jury, and it is theirs to accept or reject all or any part of the witnesses' testimony, as it may convey to their minds the impress of truth. *State v. Hill,* 141 N. C., 769; *State v. Green,* 134 N. C., 658.

Again, while the statements made on this cross-examination are evidence on the issue as to contributory negligence,. and were so submitted to the jury as a separate and complete defense, which the defendant's position seeks to make them, these statements chiefly derive what force and significance they may have from the fact that they tend to establish that the intestate at the time of the occurrence was acting in disobedience of orders which the conductor at some previous time, and when acting as vice-principal, had given for the employees' protection. It does not clearly appear from the evidence that the conductor, when the alleged previous order and warnings were given, was then acting as vice-principal towards the intestate or giving an order to govern his future conduct; but if this be conceded, and the directions and warnings given by the conductor at some previous time should be allowed the force and effect of a rule of the company made for the employees' protection, it should be subject to the same limitation as a rule. It must be an order given and received with the expectation and intent that it should be observed; and, as in the case of rules, it was open to the parties to show that no such intent existed—that it was simply talk, and, by the attitude of the parties and their conduct concerning it, that the order as a rule had been waived or abrogated. In that aspect the statements made in this cross-examination were fairly submitted to the jury in the full and comprehensive charge of the court.

Among other things said by the court in reference to these orders having the force and effect of rules made by the company, the Judge below said: "Now, I give you that instruc-

tion, gentlemen of the jury, subject to the modification that the effect of an order given by Plott (who, if you believe the evidence, was a superior of the plaintiff's intestate) was the same as a rule promulgated by the railroad company itself, and that such an order could be waived by the defendant as well as a rule made by the railroad company itself could be waived.

"The law is that the violation of a known rule of the company made for an employee's protection and safety, when the proximate cause of such employee's injury, will usually bar a recovery. This is only true, however, of a rule which is alive and in force, and does not obtain where a rule is habitually violated, to the knowledge of the employer or of those who stand toward the employer in the position of vice-principal, or when a rule has been violated so frequently and openly and for such a length of time that the employer could by the use of ordinary care have ascertained its nonobservance."

This was a correct statement of the law as to the effect of this order of the vice-principal having the force and effect of a rule of defendant company, and the facts in evidence fully sustain the verdict rendered under the charge. While the conductor may at some previous time have warned the intestate as to the defect in the engine and the position taken by the intestate in getting aboard, the evidence shows that the intestate on this occasion acted as all the other hands engaged in this business were accustomed to act, including the conductor himself; and in support of this position it further appeared that in the present instance the conductor himself was standing on the footboard in full view and gave no warning and made no protest. The intestate might have concluded that his superior's previous speech concerning this work was not expected or intended to be obeyed.

The facts of this case are in many respects similar to those presented and considered in *Biles v. Railroad,* 139 N. C., 528; *Coley v. Railroad,* 128 N. C., 534; and a correct appli-

cation of the principles declared in those decisions will sustain and justify the recovery had by plaintiff in the present action.

There is no error, and the judgment below is affirmed.

No Error.