LEE P. CRAWFORD, ADMINISTRATOR, v. SOUTHERN RAILWAY
COMPANY.

. (Filed 13 May, 1909.)

1. Railroads — Master and Servant — Coupling Cars — Rule of Employer—Abeyance—Positive Instructions.

A rule of a railroad company, made for the protection of its employees, to guard them against their own carelessness in jumping on the pilot of a moving engine, which, by habitual and continued violation, may be considered as in abeyance, does not lessen the force of a positive instruction to an employee, given by those in authority, not to jump upon the pilot of a moving engine while engaged in his duty of coupling cars, when such act was not necessarily done to perform the required service.

2. Same—Negligence—Instructions.

In an action for damages arising from the killing of plaintiff's intestate, alleged to have been caused by a defect in the pilot to a moving switching engine, upon which intestate jumped while engaged in his duty of coupling cars, there was evidence that a rule of the company, made to protect the employees by prohibiting them from thus jumping on the pilot of a moving engine, had become in abeyance from habitual and continued violation; and uncontradicted evidence that plaintiff's intestate had been positively and frequently and, up to the time of the injury, forbidden to do such act: *Held,* the judge should have charged, as requested, that if the injury was caused by plaintiff's intestate thus jumping upon the moving engine, in violation of the personal orders given him, and they so found the facts to be, it was not through defendant's negligence he was injured, and this without reference to whether the rules of the company were in abeyance at the time.

3. Master and Servant—Rule of Employer—Abeyance—Positive Instructions—Revisal.

Though a rule of a railroad company, made to protect its brakemen, while engaged in the scope of their employment, from the effects of their own carelessness, may have become in abeyance from habitual and continued violation, the company is not thereby deprived of its right to give specific orders to its brakemen and insist on obedience to them, or to revive the rule.

4. Master and Servant — Disobedience of Servant — Negligence — Proximate Cause.

When an injury to the servant is occasioned by his disobedience to the orders of the master, such disobedience is the proximate cause of the injury and bars recovery.

5. Issues, Form of—Facts Assumed—Negligence.

An issue which assumes the negligence of the defendant, one of the questions involved by the pleadings, is not in a good or usual form.

ACTION to recover damages for the negligent killing of Robert Lytle, tried by *Adams, J.,* and a jury, at February Term, 1909, of McDowell.

These issues were submitted:

1. "Did the negligence of the defendant cause the death of the plaintiff's intestate, as alleged in the complaint?" Answer: "Yes."

2. "Did Bob Lytle, by his own negligence, contribute to his injury, as alleged in the answer?" Answer: "No."

3. "Did the defendant, after the original injury to Bob Lytle, cause his death by its neglect of him while he was in its charge, as alleged?" Answer: ......

4. "What damage, if any, has the plaintiff sustained?" Answer: "Fifteen hundred dollars, with no interest."

The court rendered judgment against defendant, from which it appealed.

*Craig, Martin & Winston* and *Pless & Winborne* for plaintiff.
*S. J. Ervin* and *Avery & Ervin* for defendant.

BROWN, J. The intestate, Robert Lytle, was a brakeman, in the employ of the defendant, on its yards at Old Fort, and was injured while attempting to mount the pilot of one of defendant's engines while the same was in motion and running on the track, about dark, on the evening of 20 January, 1907; and of the injuries sustained defendant died, on 26 January, six days later.

There was evidence on the part of the plaintiff tending to show that the intestate mounted the pilot, on the engineer's side,

and that the step on this side of the pilot was loose and gave way, and that the intestate fell to the ground and was injured, and shortly thereafter died.

There was evidence that the rules and regulations of the defendant forbid employees to mount the pilot while the engine was in motion, and there was also evidence that these rules and regulations were frequently disobeyed by the employees, who were accustomed to mount the pilot while the engine was running.

The defendant contended that, according to the evidence in the case, the intestate had personally received specific orders not to mount the pilot of the engine while moving, and that the violation of such orders was the proximate cause of his death.

In order to present this view, defendant, in apt time, handed up several similar prayers for instruction, one of which is as follows:

"If the jury find from the evidence that Robert Lytle had been ordered by the conductor in charge of the train, or the yard-master in directing his work, not to mount the pilot while the engine was in motion on the track, and you further find that he did mount the pilot, or attempt to mount it, while the engine was in motion on the track, and that in consequence thereof lost his footing and fell, and by reason thereof sustained the injuries which resulted in his death, then it is your duty to answer the first issue 'No,' although you may find that the step on the pilot was defective."

His Honor gave the prayer, but added these words, "unless you shall find, under the charge heretofore given, that the rule was waived or abrogated."

We are of opinion that his Honor erred in making such addition to the prayers. The defendant was entitled to have the instruction given without the added words.

This is not a question of the abrogation of a rule by such long-continued violation of it that it becomes obsolete, as in *Bordeaux v. Railroad, ante,* 528. The question involved is the right of the defendant to exact of its brakeman obedience to the specific orders of his superiors, given in good faith and meant to be obeyed.

CRAWFORD *v.* RAILROAD.

Assuming that the defendant's rule, forbidding its employees from mounting the pilots of moving engines, has been violated so long that it may be regarded as in abeyance, that did not deprive the defendant of its right to give specific orders to its employees and to insist on obedience to them. If the company is to be deprived of this right, then there is an end to all discipline. The evidence upon which the prayer was based is clear and uncontradicted. Burgin, the conductor of the train on which the intestate was brakeman, testified: "I had told Bob Lytle that it was very dangerous to catch the pilot while the train was in motion. I gave him instructions several times not to do this. I saw him doing this, and told him it was against instructions." Again: "I had a right to direct the work on the yard. Couplings were made under my direction. I had directed Bob Lytle not to mount the pilot while the engine was in motion. I had given him such orders several times. I gave such an order to Bob only a few days before the injury. He was on the yard when I gave this order and at the time of the injury." Again witness says: "I had been giving orders to Bob and others forbidding mounting moving cars. I always told them not to do it every time I saw it done. It was done often, and I would tell them not to do it. It was the most dangerous thing they could do. I could have had Bob discharged."

E. L. Winslow testified: "I live at Old Fort. Engineer, in employ of defendant. Robert Lytle fired for me and helped me couple and switch; helped switch and couple about two weeks before the injury. I instructed him not to jump on pilot of the engine while the engine was in motion; told him several times. It is not necessary for the coupler to ride on the pilot in order to make coupling." Assuming that the intestate was compelled to mount the engine's pilot in order to perform his duty (which is denied), he was not compelled to mount it when the engine was running. It was his duty to get on it before it started. Had the intestate done so, he would not have been run over, although the step had given way. We have recently said that it was the duty of railway companies to frame rules for the protection of its employees, not only to protect them from the

carelessness of their fellow-servants, but to guard them, as far as practicable, from their own carelessness as well. *Bordeaux v. Railroad, supra.* We have here such a rule, well calculated to guard the brakemen and switchmen from their own recklessness, which is the usual result of constant exposure to danger. It is said that the rule had been violated so much that it was in abeyance. Assuming that to be so, it cannot be denied that the defendant had a right to revive the rule and enforce it. That is what the conductor and the engineers were endeavoring to do in regard to the intestate, for the evidence shows that these orders were given repeatedly, and almost up to the very time of the accident.

There is not a scintilla of evidence, or even a suggestion, that the conductor and engineer were "joking" or indulging in "mere talk," as is said in *Smith v. Railroad,* 147 N. C., 609. If words mean anything, then their orders were given in earnest, with the expectation and intention that they should be obeyed. They were not suffered to become stagnant, but were reiterated and repeated, almost up to the hour of the disaster. It is difficult to understand what more the conductor or engineer could do to enforce obedience. They could not commit an assault and punish the disobedient servant without subjecting themselves to indictment and the company to damages.

This Court has repeatedly said that where the injury to the servant is occasioned by his disobedience to the orders of the master, such disobedience is the proximate cause of the injury and bars recovery. *Stewart v. Carpet Co.,* 138 N. C., 64, and cases cited. In that case *Mr. Justice Walker* well says: "When he chose to disregard the instructions he had received, and do the work in his own way, the resultant injury to himself will be referred to his own negligence or willful disobedience as its proximate cause, and not to any fault of his employer."

There being no evidence that the orders given to the intestate by the conductor and engineer, under whose control he worked, were in any way revoked or modified, his Honor erred in not giving the instructions as prayed. The additions he made were unwarranted.

As this case is to be tried again, we will suggest that the first issue is not in very good or the usual form. It seems to assume that the defendant was guilty of negligence, which is denied in the pleadings and contested in the proof.

New Trial.